ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG
APR 27 2001
MARY E. D'ANDREA, CLERK
Per_____
    DEPUTY CLERK

| | |
|---|---|
| CARLOS OCTAVIO VLADIMIR SIMO-THEN,<br>    Petitioner | : <br> : CIVIL NO. 1:CV-00-1808 |
| v. | : (JUDGE KANE) |
| CHARLES ZEMSKI, ET AL.,<br>    Respondents | : |

**EXHIBITS IN SUPPORT OF RESPONSE TO**
**SUPPLEMENTS TO HABEAS CORPUS PETITION**

DAVID M. BARASCH
UNITED STATES ATTORNEY

MARK E. MORRISON
ASSISTANT U.S. ATTORNEY

228 WALNUT STREET, 2ND FLOOR
P.O. BOX 11754
HARRISBURG, PA 17108-1754

(717) 221-4482

## TABLE OF CONTENTS

| Description | Exhibit |
|---|---|
| IJ Van Wyke's Written Memorandum and Bond Decision, March 13, 2001. . . . . . . . . . . . . | A |
| Opinion of INS Associate Commission for Examinations, dated March 7, 2001 . . . . . . . . | B |
| Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge. . . . | C |

# EXHIBIT - 1

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
YORK, PENNSYLVANIA

In the Matter of

Carlos Octavio Vladimir SIMO THEN
                 Respondent

In Bond Proceedings
File No. A41 421 023

**WRITTEN MEMORANDUM OF BOND DECISION**

      If respondent is not a citizen of the US he is not eligible for release pending his removal proceedings, as he has been convicted of conspiracy to possess with intent to distribute cocaine in US District Court in Puerto Rico on August 31, 1995, and released from incarceration therefor after October 8, 1998. If he is a citizen of the United States, however, he is not deportable and may be freed without a bond. The ultimate question is whether the INS can sustain its burden of showing by clear and convincing evidence that he is not a US citizen.

**Facts**

The facts are largely uncontested. He was born in Dominican Republic on June 2, 1975, and turned 18 in the United States on June 2, 1993. His parents separated in about 1979 when respondent was four, and his father had physical custody of him and his two brothers. His parents were legally divorced[1] on July 27, 1985 in the Dominican Republic. The divorce decree gave custody of respondent and his two siblings to his mother, although his father continued to have physical custody of them. The father married a US citizen and he and his three children became lawful permanent residents of the United States on June 23, 1988; respondent was 13 years old at the time, he moved to the United States, and did not see his mother anymore. His father became a US citizen on March 2, 1992 when respondent was 16 years and 9 months of age. Apparently for purposes of clarifying the custody question before the INS, respondent's mother executed a formal certificate ("acta" in Spanish) on August 10, 1992 and sent it to respondent's father for filing with the INS. That document was signed by the mother and seven

---

    [1] Some unusual facts – his parents' divorce prior to his birth, remarriage thereafter, and subsequent divorce – do not change the relevant agreed facts here: respondent was the legitimate son of his father and mother under Dominican law, and the decree of July 27, 1985 was the final divorce between the parents.

EXHIBIT

witnesses before a lawyer and notary public in Santo Domingo, who signed, sealed and stamped it as a formal certificate. We have two copies of the text, the first a photocopy of the original which was apparently taken from the INS files, and the second a newly-typed copy signed by the attorney/notary before whom it was originally executed, together with the seal and signature of the Santo Domingo Chief Government Administrator ("Procuraduria General") dated July 11, 2000, and the signature and seal of the Consul in charge of legal documents at the Ministry of Foreign Affairs of the Dominican Republic dated July 12, 2000, attesting to its authenticity. In this certificate the witnesses stated under oath that they knew Iris Altagracia Then Alvarado, respondent's mother, and that since 1985 she has granted custody of her three children (listed by name and birth date, including respondent) to their father, specifically named (Edmundo Emmanuel Simo Bueno), identified as a US citizen, adding that "from that time" he has had custody of the children. In the same certificate respondent's mother says under oath that by this certificate she ratifies that the same Edmundo Emmanuel Simo Bueno has had custody of the children. At the time this certificate and ratification was executed on August 10, 1992, respondent was 17 years, two months and 8 days old. It is uncontested that respondents father had physical custody of respondent from at least 1988 when respondent immigrated to the US, and that respondent's mother has not immigrated to the United States or visited here. INS records demonstrate that the father had actual custody of the children when they immigrated.

## Legal issues

These facts raise a pair of legal questions: (1) is the 1992 certificate ratifying custody in the father of appropriate type and sufficient formality under Dominican law to effectuate a "legal custody" in the father, under Dominican law? and (2) if that question cannot be determined with certainty, what do the burden of proof standards dictate as the default outcome? The agreement among the parties goes this far: if the 1992 document is sufficient to transfer legal custody under Dominican law, or if it, together with the fact of actual custody in the father, is sufficient to do so, then the circumstances meet the requirements of INA §321(a)(3) that would make the respondent derive US citizenship from his father, either at the time of his naturalization (if the August 1992 certificate effectively relates back to 1985 as it purports to do) or, at the latest, in August 1992 when the certificate was formally executed.

## Discussion: (1) What does Dominican law say?

The statute relevant to the first question reads in relevant part, "A child born outside of the United States of alien parents . . . becomes a citizen upon . . . (3) the naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . ." INA §321(a)(3). Whether any particular act or document is sufficient to change legal custody is a question to be decided under local law of the jurisdiction where the act is purported to have taken place. *Matter of Mourillon,* 18 I&N Dec. 122, 123 (BIA 1981), *Matter of Quispe,* 16 I&N Dec. 174, 175 (BIA 1977). There is no question the parents were legally divorced, that the decree originally gave custody of the children to the mother, that the father had actual physical custody, and that the mother and witnesses signed a formal document in 1992 purporting to

2

recognize the father as custodian. Is the latter document, whose authenticity is not questioned, sufficient under Dominican law to grant "legal custody" to respondent? We do not know. The fact of its formality, with sworn statements, witnesses, and a notary's signature and seals and government stamps, together with the Foreign Ministry's consideration of it as sufficiently formal to be worthy of authentication, argues in favor of its evidencing legal and not just de facto custody. We must also remind ourselves that there is no questioning that actual physical custody was in the father exclusively, that the father resided with the children in a different country from the mother, and that the mother has never been to that other country (the US). Thus, the parties' own intentions are manifest clearly in the document, i.e. it is not a subterfuge, or even really a change, but simply lays out in a formal way, apparently for formal purposes, the reality that both parents and all three sons had been living for at least 4 years if not 7.

On the other hand, we simply do not have the Dominican law which might settle this question. We cannot, in the end, resolve the matter with certainty.

### Discussion: (2) Whose burden is it to resolve this question?

Under 8 CFR 297.2(a)(3) the court has permitted respondent to be represented by his god-father, who is not a lawyer but a lay person who speaks both Spanish and English. He has been able to find documents and follow, for the most part, the tedious turns of the law in this case. (It is *not* apparent that he has written the various briefs submitted in this case prior to his appearance on his god-son's behalf, and the court has never verified that one way or the other.) The INS, of course, is represented by an attorney.

The law requires the INS to bear the ultimate burden of proving alienage, and doing so by clear and convincing evidence. *Matter of Cervantes-Torres*, 21 I&N Dec. 351, 354 (BIA 1996) ("The burden of proof in deportation proceedings does not shift to the alien to show time, place, and manner of entry under section 291 of the Act, 8 U.S.C. § 1361 (1994), until after the respondent's alienage has been established by clear, unequivocal, and convincing evidence. Murphy v. INS, 54 F.3d 605 (9th Cir.1995); see also Woodby v. INS, 385 U.S. 276 (1966); 8 C.F.R. § 242.14(a) (1995)"). "As a corollary, the respondent does not have to establish that he is, beyond any challenge, a United States citizen. If the Government has not satisfactorily established alienage, that would end this deportation case. So far as this Board is concerned the task before us is solely to determine the outcome of this deportation proceeding. Either the Government has established, by the requisite burden of proof, that the respondent is an alien, or it has not; if it has not, it is not incumbent upon this Board to go the additional step of determining whether he is also a citizen. That determination can be left to some future date and some other process." *Matter of Cantu*, 17 I. & N. Dec. 190, 194 (BIA 1978). "The burden to establish alienage in a deportation proceeding is upon the Government. When there is a claim of citizenship, however, one born abroad is presumed to be an alien and must go forward with the evidence to establish his claim to United States citizenship." *Matter of Tijerina-Villarreal*, 13 I. & N. Dec. 327, 330 (BIA 1969). A "presumption" imposes a burden of going forward to rebut it, but the burden of proof remains with the original party throughout. F.R.Evid. §301.

3

Here, the respondent has gone as far as he has been able to to rebut the presumption. He has presented all the relevant documents. The only question now is whether there is any Dominican law on this subject. At this point we simply do not know that law. It may be Dominican law is silent on whether a formal, legal, witnessed document ratifying the relinquishment of custody to an ex-spouse operates to effectuate what it purports to do. It may be the law is clear that it can be done, or clear that it cannot. In other words, respondent has presented a prima facie case that he has derived citizenship: if all his evidence is taken to mean what he says it means, his father's physical custody was also legal, and he is a citizen. He has "gone forward" with evidence as he is supposed to under *Tijerina*. The only remaining question is legal, not factual, which distinguishes this case from *Tijerina*, where the Board found the *evidence* not credible. Here there is no question of the credibility of the evidence; now we simply have to consider how to interpret it under the applicable law.

Without question the INS bears the ultimate burden of proving alienage. At the close of this case there remains a substantial question as to whether the respondent is in fact an alien. It may well be that he is a citizen of the United States. If there is no Dominican law on point, the legal formalities supporting the mother's ratification of the father's legal custody is sufficient to establish that he has legal as well as physical custody of the children. As to the parties there is no understanding that the mother has custody, nor any dispute that the father has custody. Furthermore, this was established of record before the time had expired for respondent to derive citizenship through his father, rather than afterwards. If there is Dominican law on point, and the law supports the efficacy of such a formal agreement, the respondent has also shown he meets the requirements of INA §321(a)(3). It is only if Dominican law speaks to this point and holds that such a documents is *not* sufficient to transfer legal custody or legally ratify a physical transfer of custody between ex-spouses that respondent is not a US citizen. In a petition for a certificate of citizenship before the INS it may be necessary for him to prove this negative. But in this removal proceeding, where the INS has the burden of proving alienage by well more than a preponderance of the evidence, it is not for respondent to prove he is a citizen but for the INS to prove that he is not. See *Cantu*, supra; see also the BIA's decision of August 15, 2000, at 2 (remanding the removal proceedings notwithstanding a negative decision by the INS on the respondent's Application for Certificate of Citizenship, because the Immigration Judge likewise has jurisdiction to consider whether respondent is a United States citizen, a "determination . . . [which] is clearly relevant to these proceedings").

## Conclusion

The court is not asked to find whether respondent has met any burden he may have of proving that he is a United States citizen. Rather, it is asked to determine, for purposes of removability, whether the INS has borne its burden of showing, by clear and convincing evidence, that respondent is *not* a citizen. The parties agree that the respondent was born abroad, and therefore must go forward with evidence to show that he is a US citizen. He has gone forward with sufficient evidence to render any determination about his citizenship unclear and equivocal. The ultimate burden rests with the INS to clarify what is not clear, if it can be done.

4

That burden has not been met, so the first allegation in the Notice to Appear – that respondent is not a citizen of the United States – cannot be sustained. That being so, we need not go any further. "[I]t is not incumbent upon this Board [or this court] to go the additional step of determining whether he is also a citizen. That determination can be left to some future date and some other process." *Cantu*, supra.

Since respondent's deportability hinges on his alienage, deportability is not shown on these facts by his conviction. That being so, he is not ineligible for release under INA §236(c)(1), as it has not been shown that he is deportable because it has not been shown that he is an alien.

Seeing that these proceedings will ultimately be terminated, and that a very real possibility exists that the respondent is a citizen of the United States, and that he has maintained a close relation with his god-father who represents him, and that he will continue to be represented during any appeals of this matter, the court finds it appropriate to release him on his recognizance.

Under *Matter of Joseph (II)*, Int. Dec. #3398 (BIA 1999) the court finds the INS is substantially unlikely to meet its burden of proving alienage by clear and convincing evidence.

ORDER

IT IS ORDERED that the respondent shall be and is hereby released on his own recognizance pending further proceedings in this case.[2]

Bond decision December 22, 2000
This memorandum March 13, 2001[3]

William Van Wyke
Immigration Judge

---

[2] The INS exercised its unreviewable discretion to stay the court's decision by filing form EOIR-43 the same day, 8 CFR 3.19(*i*)(2).

[3] On February 13, 2001, the court terminated proceedings on substantially the grounds stated herein, with a little additional evidence. The INS reserved its right to appeal that decision.

5

# EXHIBIT - 2



U.S. Department of Justice

Immigration and Naturalization Service

OFFICE OF ADMINISTRATIVE APPEALS
425 Eye Street N.W.
ULLB, 3rd Floor
Washington, D.C. 20536

CARLOS OCTAVIO VLADIMIR SIMO-THEN
C/O CUSTODIAN
BOP ALLENWOOD, LOW FCI LSCI
WHITE DEER, PA 17887

FILE: A41 421 023     Office: Pennsylvania      Date: **MAR - 7 2001**

IN RE: Applicant:   CARLOS OCTAVIO VLADIMIR SIMO-THEN
                    aka VLADIMIR SIMOTHEN

APPLICATION:  Application for Certificate of Citizenship under § 341(a) of the Immigration and Nationality Act, 8 U.S.C. 1452(a)

IN BEHALF OF APPLICANT:    Self-represented

INSTRUCTIONS:

This is the decision in your case. All documents have been returned to the office which originally decided your case. Any further inquiry must be made to that office.

If you believe the law was inappropriately applied or the analysis used in reaching the decision was inconsistent with the information provided or with precedent decisions, you may file a motion to reconsider. Such a motion must state the reasons for reconsideration and be supported by any pertinent precedent decisions. Any motion to reconsider must be filed within 30 days of the decision that the motion seeks to reconsider, as required under 8 C.F.R. 103.5(a)(1)(i).

If you have new or additional information which you wish to have considered, you may file a motion to reopen. Such a motion must state the new facts to be proved at the reopened proceeding and be supported by affidavits or other documentary evidence. Any motion to reopen must be filed within 30 days of the decision that the motion seeks to reopen, except that failure to file before this period expires may be excused in the discretion of the Service where it is demonstrated that the delay was reasonable and beyond the control of the applicant or petitioner. Id.

Any motion must be filed with the office which originally decided your case along with a fee of $110 as required under 8 C.F.R. 103.7.

FOR THE ASSOCIATE COMMISSIONER,
EXAMINATIONS

Robert P. Wiemann, Acting Director
Administrative Appeals Office


EXHIBIT B

Page 2                                                    A41 421 023

**DISCUSSION:** The application was denied by the Acting District Director, Philadelphia, Pennsylvania, and is now before the Associate Commissioner for Examinations on appeal. The appeal will be dismissed.

The record reflects that the applicant was born on June 2, 1975 in the Dominican Republic. The applicant's father, Edmundo Simo, was born in the Dominican Republic in August 1974 and became a naturalized U.S. citizen on March 2, 1992. The applicant's mother, Iris Altagracia Then, was born in April 1952 in the Dominican Republic and never became a United States citizen.

The applicant's father married Yris (Iris) Altagracia Alvarado on January 23, 1971 and that marriage was terminated by mutual consent on December 14, 1973. The applicant's parents were not married to each other at the time of his birth. On March 19, 1979, the applicant's parents remarried and the applicant was legitimated. The second marriage ended on July 27, 1985. Custody of the applicant was awarded to his mother. There is no evidence to show that the legal determination of custody was ever overturned or overturned prior to the applicant's 18th birthday. The applicant's father married Ana Costoso Villaran in January 1986 and she died in 1988.

The applicant was lawfully admitted for permanent residence in June 1988. The applicant claims eligibility for a certificate of citizenship under § 321 of the Immigration and Nationality Act (the Act), 8 U.S.C. 1432.

The acting district director initially determined that there was no evidence in the record to show that the applicant's parents ever married so legal separation and legal custody could not be established. Later, after the appropriate documentation was received, the acting district director entered a revised decision in which it was determined that, although the applicant's parents later married and legitimated the applicant, the applicant failed to derive U.S. citizenship upon his father's naturalization because the applicant's mother was granted legal custody when the parents divorced in 1985 and his mother never became a U.S. citizen.

On appeal, the applicant states that the decision denying the application is defective and based on erroneous interpretation of the applicable statutes. The applicant states that § 309 of the Act, 8 U.S.C. 1409, provides for the derivation of citizenship in this matter.

Section 309 of the Act provides, in part, that:

> (a) The provisions of paragraphs (c), (d), (e), and (g) of § 301, and paragraph (2) of § 308, shall apply as of the date of birth to a person born out of wedlock if-

(1) a blood relationship between the person and the father is established by clear and convincing evidence,

(2) the father had the nationality of the United States at the time of the person's birth,

(3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and

(4) while the person is under the age of 18 years-

   (A) the person is legitimated under the law of the person's residence or domicile,

   (B) the father acknowledges paternity of the person in writing under oath, or

   (C) the paternity of the person is established by adjudication of a competent court.

Although the applicant was born out of wedlock as indicated and he was later legitimated by his parent's marriage, his father was not a United States citizen at the time of the applicant's birth in 1975 as required by § 309(a)(2) of the Act. Therefore, the provisions of § 309 of the Act are not applicable in this matter.

Section 321. CHILD BORN OUTSIDE OF UNITED STATES OF ALIEN PARENT; CONDITIONS UNDER WHICH CITIZENSHIP AUTOMATICALLY ACQUIRED

   (a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

   (1) The naturalization of both parents; or

   (2) The naturalization of the surviving parent if one of the parents is deceased; or

   (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if-

   (4) Such naturalization takes place while said child is under the age of 18 years; and

> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of 18 years.

In *Matter of Fuentes*, 21 I&N Dec. 893 (BIA 1997), the Board stated the following: "Through subsequent discussions, [the interested agencies] have agreed on what we believe to be a more judicious interpretation of § 321(a). We now hold that, as long as all the conditions specified in § 321(a) are satisfied before the minor's 18th birthday, the order in which they occur is irrelevant."

The record establishes that (1) the applicant's father became a naturalized U.S. citizen in 1992 and prior to the applicant's 18th birthday, (2) the applicant was legitimated by his parent's marriage in 1979 and (3) he was residing in the United States as a lawful permanent resident when his parents divorced in 1985.

However, in order for the applicant to receive the benefits of § 321 of the Act, the applicant must have been in the legal custody of the naturalized parent. The record clearly reflects that custody of the applicant was awarded to his mother who never became a naturalized citizen. Therefore, the father's naturalization does not result in the applicant's derivation of U.S. citizenship.

There is no provision under the law by which the applicant could have automatically acquired U.S. citizenship through his father's naturalization. Therefore, the appeal will be dismissed. This decision is without prejudice to the applicant seeking U.S. citizenship through normal naturalization procedures.

**ORDER:** The appeal is dismissed.

03/05/01/AAORDB01/N/41421023.ctz

# EXHIBIT - 3

Case 1:00-cv-01803-YK-DB    Document 16    Filed 04/27/2001    Page 14 of 17



**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB # 1105-0065

Notice of Appeal to the Board of Immigration
Appeals of Decision of Immigration Judge

1. List Name(s) and "A" Number(s) of all Applicant(s)/Respondent(s):

   Carlos SIMO-THEN

   A 41-421-023

   **\*\*INS MERITS APPEAL\*\***

   WARNING TO ALL APPLICANTS/RESPONDENTS: Names and "A" Numbers of persons not filing the appeal must be listed in Item 5.

   For Official Use Only

2. Applicant/Respondent is currently  [X] DETAINED   [ ] NOT DETAINED.

3. Appeal from the Immigration Judge's decision dated  **February 13, 2001**

4. State in detail the reason(s) for this appeal. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

   ⚠ **WARNING:** The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice, unless you give specific details in a timely separate written brief or statement filed with the Board.

   **This is a merits appeal by the Immigration and Naturalization Service (the "Service").**

   The Immigration Judge erred as a matter of law in terminating removal proceedings. The respondent [was placed] in removal proceedings pursuant to a Notice To Appear, dated August 3, 1999. He has a conviction for Conspiracy to Possess With Intent to Deliver 7 kilograms of cocaine. The respondent has been convicted of an aggravated felony as defined in §101(a)(43)(B) of the Act.

   The Service may raise additional issues in its brief.

   \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*FEE EXEMPT\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

   (Attach more sheets if necessary)

   EXHIBIT C

(Form continues on back)
Form EOIR - 26
Revised April 1996

TOTAL P.03

5. I  ☐ do  
    ☒ do not  

desire oral argument before the Board of Immigration Appeals.

6. I  ☒ will  
    ☐ will not  

file a separate written brief or statement in addition to the "Reasons(s) for Appeal" written above or accompanying this form.

! **WARNING:** Your appeal may be summarily dismissed if you indicate in Item #6 that you will file a separate written brief or statement and, within the time set for filing, you fail to file the brief or statement and do not reasonably explain such failure.

7. X by _US Immigration and Naturalization Service/ [signature] Theodore J. Murphy_  February 13, 20__  
    Signature of Person Appealing  Date  
    (or attorney or representative)

**SIGN HERE →**

8. Mailing Address of Applicant(s)/Respondent(s)  
Carlos Simo-then (Name)  
York County Prison (Street Address)  
3400 Concord Road (Apartment or Room Number)  
York, PA 17402 (City, State, Zip Code)

9. Mailing Address of Attorney or Representative  
Pro se (Name)  
(Street Address)  
(Suite or Room Number)  
(City, State, Zip Code)

! **WARNING:** An attorney or representative will not be recognized as counsel on appeal and not receive documents or correspondence in connection with the appeal, unless he/she submits a completed Form EOIR-27.

## CERTIFICATE OF SERVICE
(Must Be Completed)

10. I  Theodore J. Murphy, Assistant District Counsel  Mailed or delivered a copy of this notice of a__  
    (Name)

on  February 13, 2001  
    (Date)

To  Carlos Simo-Then  
    (Opposing Party)

at  INS Detainee, c/o York County Prison, 3400 Concord Road, York, PA 17402  
    (Address of Opposing Party)

**SIGN HERE →**  X _[signature]_  
Signature of Person Appealing  
(or attorney or representative)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS OCTAVIO VLADIMIR SIMO-THEN, Petitioner | CIVIL NO. 1:CV-00-1808 |
| v. | (JUDGE KANE) |
| CHARLES ZEMSKI, ET AL., Respondents | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 27th day of April 2001, she served a copy of the attached

### EXHIBITS IN SUPPORT OF RESPONSE TO SUPPLEMENTS TO HABEAS CORPUS PETITION

by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE(S):
Carlos Octavio Vladimir Simo-Then
Inmate No. 00-00236
Snyder County Jail
600 Old Colony Rd.
Selinsgrove, PA 17870-8610

*Patricia A. Kolonoski*
PATRICIA A. KOLONOSKI
Legal Secretary